# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Timothy Peroceski, | Civ. No. 08-333 (JRT/JJK) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| Robert Tarr, Deputy Tarr; St. Louis County Sheriff's Dept.; Ryan Riley, Officer Riley; and City of Hibbing Police Dept., | |
| Defendants. | |

Timothy Peroceski, 13084-041, P. O. Box 1000, 211u, Duluth, MN 55817, *pro se.*

Dale O. Harris, Esq., Assistant County Attorney, St. Louis County, 100 N. 5th Avenue W., Ste 501, Duluth, MN 55802, counsel for Defendants Robert Tarr and St. Louis County Sheriff's Dept.

Susan M. Tindal, Esq., Iverson Reuvers, LLC, 9321 Ensign Avenue S., Bloomington, MN 55438, counsel for Defendants Ryan Riley and City of Hibbing Police Department.

United States Magistrate Judge Jeffrey J. Keyes

This matter is before the undersigned United States Magistrate Judge on Defendants' Motions for Summary Judgment (Doc. Nos. 33 and 40) and Plaintiff's Motion for Summary Judgment (Doc. No. 51). The matter has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, this Court recommends that Defendants' motions be granted, Plaintiff's motion be denied,

and this action be dismissed with prejudice.

## I.   INTRODUCTION

Plaintiff is currently serving a sentence of 121 months for possession of methamphetamine with intent to distribute as a result of his conviction in this Court.  (Doc. No. 36, Second Aff. of Dale O. Harrris ("Second Harris Aff.") ¶ 2.B., Ex. B at 1-2.)  He brings this action pursuant to 42 U.S.C. § 1983 against Robert Tarr, a St. Louis County Deputy Sheriff, the St. Louis County Sheriff's Department, Hibbing Police Investigator Ryan Riley, and the City of Hibbing Police Department alleging that he was subjected to an unlawful search of his person when he was arrested on July 6, 2006, in Hibbing, Minnesota.  (Doc. No. 1.)  Plaintiff contends that Officers Tarr and Riley violated his civil rights because they allegedly "exposed my private parts, by pulling down my pants in a crowded parking lot" when they were searching for drugs on his person.  (*Id.* at 3.)  As mentioned above, all Defendants have moved for summary judgment. (Doc. Nos. 33 and 40).  The individual Defendants assert that they are entitled to qualified immunity; the St. Louis County Sheriff's Deptartment and the City of Hibbing Police Department assert that they are not legal entities subject to suit and, even if the claims are construed as being against proper municipalities, Plaintiff has no viable claim of municipal liability.  Plaintiff also moves for summary judgment arguing that the undisputed facts establish that judgment should be entered in his favor.

2

## II.     BACKGROUND FACTS

### A.     Undisputed Background Facts

The following are the background facts about the events which occurred before the incident in question.  None of these facts which have been sworn to by the arresting officer have been disputed by Plaintiff.

Before Plaintiff was arrested in July, 2006, Defendant Robert Tarr, a St. Louis County Deputy Sheriff, and Defendant Ryan Riley, a Hibbing Police Investigator, received tips that Plaintiff was selling methamphetamine.  (Doc. No. 37, Aff. of Robert Tarr ("Tarr Aff.") ¶ 3.)  On July 6, 2006, Tarr received information from a confidential reliable informant that Plaintiff was about to sell the informant methamphetamine.  (*Id.* ¶ 4.)  Tarr and Riley commenced surveillance of the residence where Plaintiff was living and, when the Plaintiff drove off in a pickup truck towing a trailer, they followed him because they believed that he was going to meet with the informant for the methamphetamine sale.  (*Id.* ¶ 7.)  They ran a driver's license check on Plaintiff and discovered that he had a suspended driver's license and should not be driving.  (*Id.*)

After they followed him a short distance, Plaintiff turned into a gas station located on the corner of the Wal-Mart parking lot in Hibbing, pulling into the gas-pump area.  (*Id.*)  Tarr and Riley decided to approach Plaintiff, knowing that he was driving without a valid license, in order to protect the informant's identity.  (*Id.*)  They approached Plaintiff on foot from opposite ends of his vehicle, and

Tarr observed Plaintiff seated in the driver's seat of the pickup truck.  (*Id.* ¶ 8.)

After Tarr identified himself, he told the Plaintiff that he was driving with a

suspended license.  (*Id.*)  Plaintiff got out of the truck, but then turned back

toward the open driver's door of the pickup truck, "as though he were going to

reach inside the truck."  (*Id.* ¶ 9.)  At that point, Tarr observed, on the driver's

seat, a tied, clear plastic baggie containing a substance which Tarr believed to be

methamphetamine.  (*Id.*)  Tarr told Plaintiff that he saw the meth on the seat of

the vehicle, and handcuffed him.  (*Id.*)  With Investigator Riley standing next to

him, Tarr then conducted a search incident to the arrest.  (*Id.*)

The officers had Plaintiff stand up against the box area of the pickup, with

the gas pumps on one side and the truck on the other.  (Tarr Aff. ¶ 10.)  Tarr

found a clear ziplock baggie in Plaintiff's right-front pants pocket which contained

a substance Tarr believed to be methamphetamine.  He also found, in that

pocket, U.S. currency in an amount which counted out to be $1,025.  In Plaintiff's

left-front pants pocket, Tarr seized another $300 in cash, consisting of $20 bills

rolled up with a rubber band.  (*Id.*)  He found an additional $31.50 in that same

left-front pants pocket.  Tarr then removed Plaintiff's hat so that a visual search of

Plaintiff's head area could be performed.  Next Tarr had Plaintiff sit on the trailer

and Tarr removed Plaintiff's shoes and socks because, according to Tarr,

footwear is a common hiding spot for narcotics or other contraband.  (*Id.*)  Based

on the amount of contraband found in Plaintiff's pocket and in the truck, Tarr

4

determined that he needed to conduct a more thorough search of Plaintiff's person because Tarr "did not want to risk losing any additional narcotics that [Plaintiff] might have had on his person.  In [Tarr's] experience, it is common for narcotics dealers to arrange multiple drug sales at one time and have several different packages of narcotics on their person."  (*Id.* ¶ 12.)

## B.   The Disputed Background Facts About the Reach-in Search

The next part of the search of Plaintiff's person is what is at issue in this case.  Plaintiff contends that Tarr and Riley forced him to "strip" in plain view of the general public in the "crowded Walmart parking lot" so that they could perform what Plaintiff calls a "strip search" for contraband hidden in the groin area.  (Doc. No. 1.)  Plaintiff contends that Tarr and Riley "exposed my private parts, by pulling down my pants in a crowded parking lot.  And a perfect example of the state of mind of the Defendants is when Ryan [Riley] said to me 'What is the matter.  Are you self-conscious of your manhood?'"  (*Id.*)

Tarr and Riley swear that they did not pull down Plaintiff's pants and expose him to public view or do anything to humiliate him.  (Tarr Aff. ¶ 13; Doc. No. 43, Aff. of Ryan Riley ("Riley Aff.") ¶ 7.)  They testify that they did not "strip" Plaintiff but actually performed a discrete check down the front of Plaintiff's pants while shielding him from public view by the way they positioned Plaintiff between the truck, the gas pumps, and their own blocking bodies.  (Tarr Aff. ¶ 13; Riley Aff. ¶ 7.)  No drugs or other contraband were found in this part of the search.

5

Fortunately, this is a case where we have a video record of the event in issue because the security camera at the gas station recorded this part of the search. The Defendants have submitted the video in support of their motion and this Court has, of course, studied it. (Second Harris Aff. ¶ 2.G.) The video confirms Tarr's and Riley's description of the pants search and belies Plaintiff's claim that he was forced to take his pants off and have his "private parts" exposed, in humiliating fashion, in a crowded parking lot. In his affidavit, Tarr links his version of what occurred in the pants search to the video frames:

> I had Peroceski stand up next to the trailer. (Video at 17:16:22). Prior to searching M. Peroceski's waist area, I walked him back toward the cab of the vehicle opened the driver's side door, to provide a greater degree of privacy. (Video at 17:16:32). Officer Riley had returned by this time, and stood between Mr. Peroceski and the rear of the vehicle. Mr. Peroceski was wearing a t-shirt and blue jeans. I unbuckled his belt and undid the button and zipper on his pants. (Video at 17:16:40). At that point, I pulled the waistband of his pants horizontally toward me as well as the waistband of his underwear. At no time did I pull his pants down, nor were his genitals exposed to public view. Instead, I looked down the front of his pants to ensure that there was no additional contraband hidden in his underwear, and then I re-fastened his pants and belt. Peroceski refused to hold completely still while I was conducting this search, and appeared to me to be guarding his groin area. The entire search of his groin area lasted less than 30 seconds. (Video at 17:16:37-17:17:04). Mr. Peroceski was shielded from view on one side by the open door of the pickup, on another side by the box and cab of the pickup, on the third side by the gas pumps, and the fourth side by Investigator Riley.

(Tarr. Aff. ¶ 13.)

Although the video does not give an unobstructed view of what happened

when Tarr checked down Plaintiff's pants, this is because of the way in which

Tarr and Riley shielded Plaintiff from view.  It is clear, however, that Plaintiff's

pants were not removed, nor was a conventional strip search performed.  The

video shows that while the search of Plaintiff was going on, other people entered

the gas station, including one person who pulled up to the pump opposite to

where the search was being conducted, and used the gas pump.  All of this

activity appears quite normal; none of these people who are coming and going in

the gas station appear to pay any attention to the interaction between Tarr, Riley,

and Plaintiff.  (*See generally* Second Harris Aff. ¶ 2.G.)

As noted above, federal criminal charges were brought against Plaintiff

following his arrest and a subsequent search of the house where he was living

and where more drugs were found.  After the federal charges were brought,

Plaintiff withdrew his pretrial motions to suppress evidence and statements.

(Second Harris Aff. ¶ 2.C.)  A plea agreement was negotiated and, as discussed

above, Plaintiff is currently serving a sentence of 121 months at FCI Waseca for

the crime of possession of methamphetamine with intent to distribute.  (Second

Harris Aff. ¶ 2.B.)

### III.    SUMMARY JUDGMENT STANDARD

The United States Supreme Court has emphasized that trial courts should

look favorably upon motions for summary judgment to accomplish the just,

speedy, and inexpensive resolution of civil litigation.  *See Celotex v. Catrett*, 477

7

U.S. 317 (1986); *Anderson*, 477 U.S. 242 (1986).

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could . . . return a verdict for [the non-movant]."  *Baucom v. Holiday Cos.*, 428 F.3d 764, 766 (8th Cir. 2005).

The court must give the non-moving party the benefit of all reasonable inferences that may be drawn from the facts.  *ACT, Inc. v. Sylvan Learning Sys., Inc.*, 296 F.3d 657, 666 (8th Cir. 2002).  It is important to emphasize, however, that *facts* are required to defeat a motion for summary judgment.  *See id.*  The non-moving party is not entitled to the benefit of unreasonable inferences which amount to nothing more than conjecture.  *Id.*

Rule 56(e)(2) asserts "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavit or otherwise provided in this rule – set out specific facts showing a genuine issue for trial."

It is not enough for the non-moving party to present a few facts.  Rather,

the non-movant must present enough facts "to make a showing sufficient to

establish the existence of an element essential to the party's case, and on which

that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

Evidence is not "sufficient" unless a reasonable jury could return a verdict for the

non-movant.  When a defendant has moved for summary judgment:

> The judge must ask himself not whether he thinks the evidence
> unmistakably favors one side or the other but whether a fair-minded
> jury could return a verdict for the plaintiff on the evidence presented.
> The mere existence of a scintilla of evidence in support of the
> plaintiff's position will be insufficient; there must be evidence on
> which the jury could reasonably find for the plaintiff.

*Anderson*, 477 U.S. at 252.  "Where the record taken as a whole could not lead a

rational trier of fact to find for the non-moving party, there is no 'genuine issue for

trial,'" and summary judgment must be granted.  *Matsushita Elec. Indus. Co. v.

Zenith Radio Corp.*, 475 U.S. 574, 588 (1986) (quoting *First National Bank of

Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## IV.   THE INDIVIDUAL DEFENDANTS ARE ENTITILED TO QUALIFIED IMMUNITY

Qualified immunity shields an officer from suit if his "conduct does not

violate clearly established statutory or constitutional rights of which a reasonable

person would have known."  *Hassan v. City of Minneapolis*, 489 F.3d 914, 919

(8th Cir. 2007) (citing *Sanders v. City of Minneapolis*, 474 F.3d 523, 526 (8th Cir.

2007)).  "Qualified immunity is not just a defense to liability, it constitutes

immunity from suit."  *Saucier v. Katz*, 533 U.S. 194, 200 (2001).  "In addressing

9

an officer's claimed entitlement to qualified immunity, the court must first determine whether the allegations amount to a constitutional violation, and then, whether that right was clearly established." *Sanders*, 474 F.3d at 526. The issue of qualified immunity is a question of law for the court, rather than the jury, to decide. *Littrell v. Franklin*, 388 F.2d 578, 594-5 (8th Cir. 2004).

It is well established that officers are permitted to search an arrestee and the area within his immediate control to protect officer safety and preserve evidence. *United States v. Barnes*, 374 F.3d 601, 603 (8th Cir. 2004) (citing *Chimel v. California*, 395 U.S. 752, 763 (1969)). *See also, United States v. Morales*, 923 F.2d 621, 626 (8th Cir. 1991). The Fourth Amendment proscribes "unreasonable" searches, and "[t]he test of reasonableness . . . requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). The Fourth Amendment reasonableness of a strip search, for example, turns on "'the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducts.'" *Richmond v. City of Brooklyn Center*, 490 F.3d 1002, 1006 (8th Cir. 2007) (quoting *Bell*, 441 U.S. at 559). The Eighth Circuit has also recognized the difference between a "full" strip search, and a less intrusive search of a person's groin area while still partially clothed. *See United States v. Williams*, 477 F.3d 974, 976 (8th Cir. 2007), *cert. denied*, 128 S.Ct. 237 (2007); *Smook v Minnehaha County*, 457 F.3d

806, 812 (8th Cir. 2006).

The Eighth Circuit had occasion to deal with the type of search in issue in this case in *Williams*. There, officers made a traffic stop on a busy street and, after conducting a pat-down search, suspected that defendant was concealing contraband in his groin area. They took the defendant to a parking lot behind a police station, adjacent to a residential area, where an officer opened the defendant's pants, reached inside the defendant's underwear, and retrieved a large amount of cocaine near the defendant's genitals. 477 F.3d at 975.

The Eighth Circuit rejected a *per se* rule that "when a detainee has been secured, and travel to a station house is possible, an on-street intimate inspection is an unconstitutional, unreasonable search." *Id.* at 977. The court held that a "reach-in" search of a clothed suspect, which does not expose the suspect's genitals to onlookers, may be permissible if law enforcement officers take steps commensurate with the circumstances to diminish the potential invasion of the arrested person's privacy. *Id.* This is consistent with the other courts which have upheld reach-in searches of clothed suspects in a public setting. *See United States v. Ashley*, 37 F.3d 678, 682 (D.C. Cir. 1994) (holding reasonable a search in which a police officer removed a bag of drugs from the suspect's underwear, where officer followed suspect from public bus station to the side of the station on the street outside, and stood in front of the suspect during the search); *State v. Jenkins*, 842 A.2d 1148, 1151, 1158 (Conn. App. Ct.

11

2004) (holding that a reach-in search was reasonable where police searched a suspect on the side of a restaurant, out of public view, by pulling the suspect's pants and underwear away from suspect's body to retrieve drugs); *State v. Smith*, 464 S.E.2d 45, 46 (N.C. 1995) (upholding a reach-in search on a public roadway where the officer used himself and a car door to shield the suspect from public view).

The reach-in search of Plaintiff's pants was not conducted until the officers had seized two quantities of methamphetamine, some of which was in the Plaintiff's pants pocket, and two large rolls of currency, suggesting that Plaintiff was about to engage in multiple drug transactions.  Tarr merely undid the pants buckle and zipper, pulled the waistband of the pants horizontally toward him, and looked down the front of Plaintiff's pants to ensure that there were no additional drugs hidden in his underwear or groin area.  The process took less than 30 seconds.  At no time were Plaintiff's pants removed.  Moreover, Tarr took precautions to ensure that even this brief search was done out of public view.  Tarr and Riley positioned Plaintiff so that the view was blocked by the gas pumps, the truck, and the officer's bodies.  Nothing in the record indicates that the search was done in a demeaning or humiliating fashion, as shown by the fact that other customers at the gas station went about their business and did not appear to notice that anything unusual was going on at all.

The security video confirms that the officers took these steps

12

commensurate with the circumstances to diminish the potential invasion of Plaintiff's privacy.  The video directly contradicts the statement in Plaintiff's Complaint that "Tarr and Riley exposed my private parts, by pulling down my pants in a crowded parking lot."  (Doc. No. 1.)  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007).  In *Scott*, a deputy terminated a high-speed pursuit of defendant's car by applying his push bumper to the rear of the vehicle, causing it to leave the road and crash, and rendering the defendant a quadriplegic.  The Supreme Court found that a videotape capturing the events contradicted the version of the story told by the defendant and that the Court of Appeals should have viewed the facts in the light depicted by the videotape.  127 S.Ct. at 1776.

Plaintiff argues that the officers could have taken him to the gas station restroom, which was only 30 feet away, to conduct the search.  However, the Fourth Amendment "does not require officers to use the least intrusive or less intrusive means to effectuate a search but instead permits a range of objectively reasonable conduct."  *Richmond*, 490 F.3d at 1009 (quoting *Shade v. City of Farmington*, 309 F.3d 1054, 1061 (8th Cir. 2002)).  Deputy Tarr's actions were well within this acceptable range.  Thus, Plaintiff's constitutional rights were not violated by the brief search incident to his arrest.

As noted above, qualified immunity protects a government official from liability in a Section 1983 action unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known.  *Henderson v. Munn*, 439 F.3d 497, 501 (8th Cir. 2006).  Thus, even if Tarr and Riley did violate a constitutional right of Plaintiff – which they did not - qualified immunity would still protect these defendants if the right was not clearly established at the time of the deprivation "in light of the specific context of the case."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  No clearly established legal standards would have put a reasonable officer in the position of Tarr or Riley on notice that, in these particular circumstances, their conduct was objectively unreasonable.  As discussed above, after forming the reasonable belief that Plaintiff may be hiding drugs, Tarr and Riley performed the reach-in search to ensure that there was no additional contraband hidden on Plaintiff's person, and did so without removing any of Plaintiff's clothing and taking reasonable precautions to shield this check from public view.

In this case, the officers' actions were objectively reasonable.  Plaintiff was under arrest and in custody for possession of methamphetamine.  The officers were authorized to conduct a search of Plaintiff's person for weapons and contraband without a warrant.  See *Morales*, 923 F.2d at 626.  Tarr had already found large quantities of cash and another package of methamphetamine during a pat-down search of Plaintiff.  (Tarr Aff. ¶ 10.)  At the time Plaintiff was

apprehended, Tarr and Riley believed he was on his way to meet their informant to make a methamphetamine sale.  (*Id.* ¶ 7.)  Tarr's training and experience suggested that Plaintiff might have more contraband on his person for other scheduled narcotics transactions.  (*Id.* ¶ 11.)  Tarr had a legitimate concern, based on his experience and training, that Plaintiff might try to dispose of any such drugs while he was being transported to jail, thus causing problems for chain-of-custody evidence in the case or problems for anyone using the squad car after Plaintiff was transported.  (*Id.*)

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  There was no law at the time of this search which would have put Tarr and Riley on notice that they were clearly violating Plaintiff's constitutional rights.  Indeed, there was ample case law suggesting that such a search would pass constitutional muster.  *United States v. Williams*, 209 F.3d 940, 942 (7th Cir. 2000) (upholding the removal of crack cocaine from the area of a suspect's buttocks while conducting a reach-in search on a public roadway); *United States v. Ashley*, 37 F.3d 678 (D.C. Cir. 1994) (concluding it was reasonable for an officer to remove a bag of drugs from a suspect's underwear during a reach-in search in the street); *Smith*, 464 S.E.2d at 45 (upholding the reasonableness of a reach-in search conducted on a public roadway where officer removed cocaine from underneath a suspect's scrotum and shielded the suspect from public view

15

with his own body and a car door); *State v. Jenkins*, 842 A.2d 1148, 1151, 1158

(Conn. App. Ct. 2004) (holding that a reach-in search was reasonable where

police searched suspect on the side of a restaurant, out of public view, by pulling

the suspect's pants and underwear away from the suspect's body to retrieve

drugs). Moreover, later in 2007, the Eighth Circuit made it clear in *Williams*[1] that

there was no *per se* rule that when a detainee has been secured, and travel to

the station house is possible, an on-street intimate inspection is an

unconstitutional, unreasonable search. 477 F.3d at 977.

In conclusion, the individual Defendants, Robert Tarr and Ryan Riley, are

entitled to qualified immunity and the claims against them should be dismissed.

## V. PLAINTIFF'S CLAIM AGAINST THE MUNICIPALITIES FAILS AS A MATTER OF LAW

As a threshold matter, both the St. Louis County Sheriff's Office and the

Hibbing Police Department assert that they are not proper parties to this § 1983

action because neither is a "person" subject to suit. The St. Louis County

Sheriff's Office asserts that it is not an independent legal entity, but rather an

agency of St. Louis County. Similarly, the City of Hibbing Police Department

---

[1]    To avoid confusion, this Court clarifies that here it is referring to the Eighth
Circuit's decision in *United States v. Williams*, 477 F.3d 974, 976 (8th Cir. 2007),
*cert. denied*, 128 S.Ct. 237 (2007).

asserts that as a municipal police department it cannot be subject to suit.[2]  But this Court need not address these arguments because, even if this *pro se* Complaint is liberally construed as asserting a claim against the appropriate municipalities involved, Plaintiff's claim of municipal liability must be dismissed as a matter of law.

In its landmark decision in *Monell v. Department of Soc. Serv.*, 436 U.S 658 (1978), the Supreme Court held that a municipality is subject to liability under § 1983 only when the violation of the Plaintiff's federally protected right can be attributable to the enforcement of a municipal policy, practice, or decision of a final municipal policy maker.  "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Monell*, 436 U.S. at 694.  Municipalities cannot be held liable under § 1983, "unless action pursuant to official municipal policy of some nature caused a constitutional tort."  *Kuha v. City of Minnetonka*, 365 F.3d 590, 603 (8th Cir. 2003) (quoting *Monell*, 436 U.S. at 691).

Additionally, "[a] [m]unicipal policy is not unconstitutional if it might allow for

---

[2]      In support of the argument that the government entities Plaintiff named in his Complaint are not subject to suit, Defendants Tarr and the St. Louis County Sheriff's Department cite *In re Scott County Master docket*, 672 F.Supp. 1152, 1163 n. 1 (D. Minn. 1987) (citing *Hancock v. Washtenaw County Prosecutor's Office*, 548 F. Supp. 1255 (E.D. Mich. 1982)), and *Hyatt v. Anoka Police Department*, 700 N.W.2d 502, 505-06 (Minn. App. 2005) (holding that a municipal police department was not an entity subject to suit).

unconstitutional conduct in some instances[, but] rather, such a policy is unconstitutional only if it requires its officer to act in such an unconstitutional manner." *Feist v. Simonson*, 36 F. Supp 2d 1136, 1149 (D. Minn. 1999) (citing *Handle v. City of Little Rock*, 772 F. Supp. 434, 438 (E.D. Ark. 1991)). The absence of such a pattern of unconstitutional misconduct must end the court's inquiry. *See Thelma D. ex rel. Delores a. v. Board of Education*, 934 F.2d 929, 933 (8th Cir. 1991). The Eighth Circuit does not use "policy" and "custom" interchangeably. *Mettler*, 165 F.3d at 1204. "[A] 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Id.*

In this case, Plaintiff has failed to come forward with any threshold showing that either municipality had a custom or policy which caused the deprivation of the constitutional right. With respect to policy, Plaintiff's Complaint fails to identify any specific policy of either municipality, and thus has failed in his burden of identifying an official policy that played a role in the claimed unreasonable search. *See Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

Nor has Plaintiff satisfied the three requirements to establish an unconstitutional custom for a *Monell* claim: (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the government entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the

officials of that misconduct; and (3) injury to the plaintiff by acts pursuant to that custom, i.e., proof that the custom was the moving force behind the constitutional violation.  *See Mettler*, 165 F.3d at 1204 (citations omitted).

Plaintiff has not presented any evidence of a widespread pattern of unconstitutional misconduct by the municipalities.  The Complaint merely recites several vague and unsupported allegations about past misdeeds, but presents no detail about these isolated incidents.  For instance the Complaint refers to "[o]ther acts, such as strip search misdemeanor arrestees, again exposing another man's private parts on the side of a busy highway and restraining a man and trying to force a catheter into the man's penis." (Doc. No. 1.)  Such isolated incidents, even if they occurred, cannot, as a matter of law, be said to establish a persistent widespread pattern of unconstitutional misconduct.  *See Thelma D.*, 934 F.2d at 933.

Plaintiff has not provided any evidence that either municipality was deliberately indifferent to, or tacitly authorized, the alleged unconstitutional behavior.  He has presented no evidence that the City of Hibbing or St. Louis County was deliberately indifferent to complaints received prior to Plaintiff's alleged constitutional violations.  *See Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996) (affirming a district court's grant of summary judgment where there was no evidence the municipality had been deliberately indifferent to complaints received prior to the constitutional violations alleged in the plaintiff's

Complaint).

Since Plaintiff is unable to show that either municipality had an

unconstitutional custom, practice or policy, he is also unable to show the custom

was the "moving force" behind the constitutional violation.  *Board of County*

*Comm's v. Brown*, 117 S.Ct. 1382, 1388 (1997).

Plaintiff contends that it is a lack of any municipal policy about "strip

searches" which gives rise to his *Monell* claim.  Specifically, he asserts that

"[s]ince there is no policy on record the court should find them liable in this case."

(Doc. No. 52.)  However, under *Mettler*, Plaintiff must prove the existence of a

continuing, widespread, persistent pattern of unconstitutional misconduct,

deliberate indifference to such conduct, and that the custom was the moving

force behind the alleged constitutional violation and injury.  Plaintiff cannot simply

rely upon the Defendant's "silence."  He must come forward with specific

evidence of a widespread pattern of unconstitutional misconduct; the vague

allegations in the Complaint do not suffice.  Thus, Plaintiff has failed to show

deliberate indifference or tacit authorization of unconstitutional conduct by the

officials of either government entity after notice to the municipalities of that

misconduct.  *Mettler*, 154 F.3d at 1204.

## VI.   PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
## SHOULD BE DENIED.

In response to the Defendants' motions for summary judgment, Plaintiff

brought a cross-motion for summary judgment contending that the "undisputed facts show that the Plaintiff was subjected to an unreasonable search by Tarr and Riley and the municipalities have failed to provide proof of any policy that would prevent the actions of Tarr and Riley."  (Doc. No. 52.)  In addition to supporting his motion for summary judgment, Plaintiff's brief on summary judgment also constituted his response to the Defendant's motions.  *Id.*  For all of the reasons set forth above, Plaintiff's motion for summary judgment should be denied.

## VII.   RECOMMENDATON

Based on the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT:**

1.  The Motion for Summary Judgment (Doc. No. 33) by Defendants Robert Tarr and the St. Louis County Sheriff's Department be **GRANTED**;

2.  The Motion for Summary Judgment (Doc. No. 40) by Defendants Ryan Riley and the City of Hibbing Police Departement be **GRANTED**;

3.     Plaintiff's Motion for Summary Judgment (Doc. No. 51) be **DENIED**; and

4.     This action be **DISMISSED** with prejudice.

Dated: January 9, 2009

*s/ Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge

21

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by January 26, 2009, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.