# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| TIMOTHY PEROCESKI, | Civil No. 08-333 (JRT/JJK) |
| Plaintiff, | |
| v. | **ORDER ADOPTING REPORT AND RECOMMENDATION** |
| ROBERT TARR, ST. LOUIS COUNTY SHERIFF'S DEPT., RYAN RILEY, and CITY OF HIBBING POLICE DEPARTMENT, | |
| Defendants. | |

Timothy Peroceski, #13084-041, P.O. Box 1000, 211u, Duluth, MN 55817, plaintiff *pro se*.

Dale O. Harris, Assistant County Attorney, **OFFICE OF THE ST. LOUIS COUNTY ATTORNEY**, 100 North Fifth Avenue West, Suite 501, Duluth, MN 55802-1298, for defendants Robert Tarr and St. Louis County Sheriff's Department.

Susan M. Tindal and Jon K. Iverson, **IVERSON REUVERS, LLC**, 9321 Ensign Avenue South, Bloomington, MN 55438, for defendants Ryan Riley and City of Hibbing Police Department.

This case is before the Court on plaintiff Timothy Peroceski's objections to a Report and Recommendation issued by United States Magistrate Jeffrey J. Keyes. After a *de novo* review of those objections, *see* 28 U.S.C. § 636(b)(1); Local Rule 72.2(b), the Court adopts the Report and Recommendation for the reasons given below.

## BACKGROUND

Prior to July 7, 2006, defendant Robert Tarr, a St. Louis County Sheriff, and defendant Ryan Riley, a Hibbing police officer, received several tips that Peroceski was selling methamphetamine. (Tarr Aff., Docket No. 37, ¶¶ 3-4.) On July 7, 2006, Tarr and Riley tailed Peroceski's vehicle, believing that he was driving to sell methamphetamine to a confidential reliable informant ("CRI"). (*Id*., ¶ 7.) Tarr and Riley followed Peroceski into a gas pump area in a Walmart parking lot. (*Id*.)

Tarr and Riley approached Peroceski's vehicle, and Tarr identified himself and indicated that Peroceski was driving with a suspended driver's license. (*Id*., ¶ 8.) Peroceski then got out of his truck, but reached back "as though he were going to reach inside of the truck." (*Id*., ¶ 9.) Tarr looked inside the vehicle and saw a clear plastic baggie that appeared to contain methamphetamine. (*Id*.) Tarr then handcuffed Peroceski and began conducting a search incident to his arrest. (*Id*.)

The officers indicate – and a gas station surveillance video confirms – that when they began the search, Peroceski was situated with the truck behind him, a gas pump directly in front of him, and Tarr and Riley on either side of him. (*Id*., ¶ 10.) Tarr's search of Peroceski's pockets yielded another plastic baggie which appeared to contain methamphetamine, and more than $1,000 in cash. (*Id*.) Following these discoveries, as well as the tips noted above, Tarr concluded that Peroceski was in the process of trafficking methamphetamine. (*Id*., ¶ 11.)

Tarr then decided to expand the search, noting that in his experience, "it is very common for individuals engaged in drug activity to hide additional quantities of

controlled substances in their crotch or groin area." (*Id*., ¶¶ 11-12.) Tarr indicates – and the surveillance video again confirms – that he then opened the driver's side door of Peroceski's vehicle and moved Peroceski toward it, and that Riley stood between Peroceski and the rear of the vehicle, to provide Peroceski with additional privacy. (*Id*., ¶ 13.) Tarr indicates that he then unbuckled Peroceski's belt, undid the button and zipper on his pants, and pulled the waistband of Peroceski's pants toward him, to look for contraband. (*Id*.) Tarr indicates that he did not pull Peroceski's pants down, or otherwise expose his midsection to public view, and re-fastened Peroceski's pants and belt when the search was completed. (*Id*.) Tarr indicates that the entire search lasted approximately thirty seconds. (*Id*.)

On February 7, 2008, Peroceski filed this *pro se* action under 42 U.S.C. § 1983 against Tarr, Riley, the St. Louis County Sheriff's Department, and the City of Hibbing Police Department. Peroceski contends that Tarr's search violated his rights under the Fourth Amendment. Peroceski's three-page complaint includes the assertion that "Tarr and Riley exposed [his] private parts, by pulling down [his] pants in a crowded parking lot." (Compl., Docket No. 1, at 3.) Following cross-motions for summary judgment, the Magistrate Judge recommended dismissing this action with prejudice. Peroceski now objects to that recommendation.

ANALYSIS

I.   STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

II.   FOURTH AMENDMENT

The Fourth Amendment prohibits "unreasonable" searches.  "The test of reasonableness . . . requires a balancing of the need for the particular search against the invasion of personal rights that the search entails."  *Bell v. Wolfish,* 441 U.S. 520, 559 (1979).  In determining reasonableness, "[c]ourts consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."  *United States v. Williams,* 477 F.3d 974, 975 (8th Cir. 2007).  In the course of applying these principles, the Eighth Circuit has expressly rejected "a bright-line rule that when a detainee has been secured, and travel to a station-house is possible, an on-street intimate inspection is an unconstitutional, unreasonable

search." *Williams*, 477 F.3d at 977 (internal quotation marks omitted). Rather, the circuit has held that "a reach-in search of a clothed suspect [that] does not display a suspect's genitals to onlookers . . . may be permissible if police take steps commensurate with the circumstances to diminish the potential invasion of the suspect's privacy." *Id*. In addition, officers are entitled to qualified immunity in their performance of such a search, so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hassan v. City of Minneapolis*, 489 F.3d 914, 919 (8th Cir. 2007) (internal quotation marks omitted).

Here, the Magistrate Judge concluded that based on the surveillance video and existing Eighth Circuit law, Peroceski has not made an adequate showing of a constitutional violation to survive summary judgment. Specifically, the Magistrate Judge concluded that after having carefully reviewed the surveillance tape, it was clear that the officers took reasonable steps to shield Peroceski from public view, limited the search of his groin area to less than thirty seconds, and did not remove Peroceski's pants. The Magistrate Judge concluded that in light of the officers' prior discovery of drugs and cash, after a tip that Peroceski was trafficking methamphetamine, such a search was constitutionally permissible as a matter of law. The Magistrate Judge added that even if there were a constitutional violation in this case, the officers were entitled to qualified immunity, because they did not violate any clearly established statutory or constitutional rights.

Peroceski now objects to the Magistrate Judge's conclusion. However, in his objection's only recitation of the facts of this case, Peroceski backs off considerably from the conclusory allegation included in his complaint. Peroceski now states:

> While officer Riley held me Deputy Tarr unfastened my shorts, and with an ungloved hand, put his four fingers down my pants and arranged them as to view my genital area and then when he was done did not have the decency to refasten my shorts but rather left me to my own devices to hold my shorts up while in restraints.

(Objections, Docket No. 62, at 1.) In other words, Peroceski does not dispute the Magistrate Judge's findings that (1) the surveillance video fails to demonstrate any exposure of Peroceski's genitals to onlookers and (2) demonstrates that the officers took affirmative steps to minimize any invasion of his privacy. Peroceski argues, however, that the search was nonetheless unreasonable.

The Court agrees with the Magistrate Judge that summary judgment for the defendants is appropriate in this case. As explained above, the officers' initial search revealed a substance that the officers believed to be methamphetamine, and also yielded a substantial amount of cash. This came after the officers had received multiple tips that Peroceski was engaged in methamphetamine trafficking, and after they had discovered additional methamphetamine in the front seat of his car. In short, the officers had confirmed that Peroceski was in the process of trafficking methamphetamine. Thus, the officers clearly had probable cause to arrest Peroceski, and were entitled to conduct a search of his person incident to that arrest. *See United States v. Barnes*, 374 F.3d 601, 603 (8th Cir. 2004) (noting that it is "settled that the police, to protect officer safety and preserve evidence, may search the person of an arrestee").

With regard to the scope of that search, Tarr's concern that Peroceski may have been concealing substances near his groin area is borne out by the facts of numerous reported drug cases. *See, e.g.*, *Williams*, 477 F.3d at 975; *United States v. Williams*, 209 F.3d 940, 942, 944 (7th Cir. 2000). This concern would have been heightened during the search at issue here, as the officers had confirmed that Peroceski was engaged in distribution – an activity that typically requires dealers to carry separately packaged drug quantities – and had already discovered individual bags of methamphetamine in his truck and in one of his pockets. In addition, the surveillance tape confirms that the officers took steps to diminish any invasion of Peroceski's privacy. *See Williams*, 477 F.3d at 977. Although the officers could conceivably have taken additional steps, perhaps by waiting to conduct their search until they had transported Peroceski to the police station or to some other private area, "[t]he Fourth Amendment does not require officers to use the least intrusive or less intrusive means to effectuate a search but instead permits a range of objectively reasonable conduct." *Shade v. City of Farmington*, 309 F.3d 1054, 1061 (8th Cir. 2002). The officers in this case had plain evidence that Peroceski was holding multiple bags of drugs, and waiting to complete the search may have created a risk that Peroceski would dispose of additional evidence – or possibly create a medical or security issue by taking methamphetamine – while he was transported. *See Richmond v. Brooklyn Center*, 490 F.3d 1002, 1009 (8th Cir. 2007).

In those circumstances, even taking the record in the light most favorable to Peroceski, the Court agrees that Tarr's brief check of Peroceski's groin area – conducted without removing Peroceski's pants; without otherwise exposing his genitals to the

public; and after Tarr had ensured that the vehicle door and he and Riley's positioning would diminish any invasion of privacy – failed to violate Peroceski's Fourth Amendment rights as a matter of law. The officers had multiple confirmations that Peroceski was in the process of distributing methamphetamine, and this additional, proscribed search was an objectively reasonable response to legitimate policing concerns.

In addition, the Court agrees with the Magistrate Judge that regardless of whether a constitutional violation occurred, it is clear as a matter of law that the officers are entitled to qualified immunity. In short, the officers had abundant evidence that Peroceski was actively trafficking methamphetamine, and no clearly established statutory or constitutional right prohibited the brief search that followed. Accordingly, the Court adopts the Report and Recommendation of the Magistrate Judge, and dismisses Peroceski's action with prejudice.[1]

**ORDER**

Based on the foregoing, all the files, records, and proceedings herein, the Court **OVERRULES** plaintiff's objections [Docket No. 62] and **ADOPTS** the Report and Recommendation of the Magistrate Judge [Docket No. 61]. Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants Tarr and the St. Louis County Sheriff's Department's Motion for Summary Judgment [Docket No. 33] is **GRANTED**.

---

[1] In the absence of any constitutional violation, there is no basis for Peroceski's claims against the St. Louis County Sheriff's Department and the City of Hibbing of Police Department.

2. Defendants Riley and the City of Hibbing Police Department's Motion for Summary Judgment [Docket No. 40] is **GRANTED**.

3. Plaintiff's Motion for Summary Judgment [Docket No. 51] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 30, 2009　　　　　　　　　‎‎‎‎‎‎‎‎_____s/ John R. Tunheim_____
at Minneapolis, Minnesota.　　　　　　　　　‎‎‎‎‎‎‎‎‎‎‎JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　‎‎‎‎‎‎‎‎‎‎‎‎United States District Judge